UNITED STATES BANKRUPTCY COURT
for the
DISTRICT OF MASSACHUSETTS

```
=======================================
                                        *
In Re:                                  *
                                        *  Chapter 7
    COLDWAVE SYSTEMS, LLC,              *  No. 05-11369
                                        *
                   Debtor                *
                                        *
=======================================
                                        *
    JOSEPH BRAUNSTEIN, TRUSTEE,         *
                                        *  Adversary Proc.
                        Plaintiff       *  No. 05-01411
                                        *
              vs.                       *
                                        *
    GATEWAY MANAGEMENT SERVICES         *
    LIMITED,                            *
                                        *
                        Defendant       *
                                        *
=======================================
```

MEMORANDUM OF DECISION ON LIABILITY ONLY

*I. Introduction*

Joseph Braunstein, Chapter 7 Trustee (the "Trustee") of Coldwave Systems, LLC (the "Debtor") brought this multi-count adversary proceeding against Gateway Management Services Limited ("Gateway") to avoid a security interest which Gateway claimed in a certain patent (the "Patent"). The Trustee moved to stay so much of the complaint as seeks damages and to proceed to trial as to liability only. I granted the motion. On April 11, 2007, I held a trial on an agreed statement of facts and agreed exhibits. After

1

argument I took the matter under advisement. I now find for the Trustee on liability.

## II. Jurisdiction

The Trustee seeks a determination that the Patent is property of the Debtor's estate. As such it is a core matter. 28 U.S.C. § 157. This decision constitutes my findings of fact and conclusions of law as to the question of liability.

## III. Agreed Facts

The parties have agreed that there are no facts in dispute and rested upon the admitted facts contained their Joint Pretrial Statement ("PTS") and agreed exhibits offered at trial. I agree that those facts and exhibits are adequate to determine the question of liability and adopt them as my findings.

Debtor was a Massachusetts limited liability company engaged in the design, development, manufacture, licensing, and sale of shipping, freezing, and storage systems. It owned the Patent, which deals with Debtor's proprietary freezing technology, used in apparatuses such as shipping containers, for the shipping of frozen foods.

Gateway was in the business of leasing insulated shipping containers into which Debtor's patented technology was incorporated. Debtor was indebted to Gateway under the terms of a finance lease and related documents. To facilitate the relationship between Debtor and Gateway, they entered into a Repayment and Security Agreement dated January 31, 2003 (the "Agreement"). The Agreement provides that Debtor "hereby grants and conveys to [Gateway] a continuing lien and security interest in the Collateral" to secure payment of its indebtedness to Gateway. "Collateral" is defined in the Agreement to

include the Patent.[1] The Agreement provides that it is governed by the laws of California other than conflicts of laws principles.

To perfect Gateway's interest in the "Collateral," including the Patent, Debtor filed a Recordation Form Cover Sheet with the United States Patent and Trademark Office ("USPTO") on June 28, 2003, recording the conveyance of a security agreement dated January 31, 2003. Gateway filed UCC-1 Financing Statements describing the Patent with the Massachusetts Secretary of State on December 2, 2004, and with the Washington, D.C., Recorder of Deeds on December 1, 2004.

Debtor was continuously indebted to Gateway at all times after January 31, 2003. On November 24, 2004, Gateway's counsel notified Debtor by facsimile that Debtor was in default of its obligations to Gateway and that Gateway elected to "exercise all of its rights under the lease and related documents, including exercise of its security interests and all rights otherwise addressed in Lease paragraph 11 ("Remedies")." It further provided that "Gateway elects to accelerate all amounts due under its lease and all other obligations with [Debtor] and to demand payment now of all amounts accelerated under the leases and those other obligations." The lease was not offered as evidence but Gateway's remedies upon default are encompassed within the Agreement which includes Gateway's right upon default, to "(iv) dispose of the Collateral, (v) sell the Collateral at public or private sales, in whole or in part, and have the right to bid and purchase at said sale, and/or (vi) take control over, lease or otherwise dispose of all or part of the Collateral, applying proceeds therefrom to the Indebtedness."

---

[1] A scrivener's error misnumbers the provision in the Agreement in which capitalized terms are defined as "Section 16"; it was actually Section 17.

On November 30, 2004, Gateway filed a Transfer Statement with the USPTO indicating the transfer of ownership of the Patent from the Debtor to Gateway. Gateway notified Debtor of this action on December 8, 2004 (the "December 8 Letter"). The December 8 Letter also provided that "further pursuant to applicable law, Gateway without prejudice, offers to place a value of $300,000 (Three Hundred Thousand Dollars) on the patent in partial satisfaction of the debt overdue to Gateway from [Debtor]. Please let us, for Gateway, have [Debtor's] timely response to this offer."

Debtor filed its petition under Chapter 11 on March 1, 2005. The case was converted to Chapter 7 on April 14, 2005, and the Trustee was duly appointed and qualified.

The parties have stipulated that Debtor was insolvent as of December 1, 2004, and that Gateway received more value from the transfer of the Patent pursuant to its foreclosure than it would have received in distribution from Debtor's estate pursuant to Chapter 7 had the transfer not been made.

Not included in the stipulated facts, but a matter of record in the principal case, is the fact that Gateway filed a proof of claim on August 11, 2005, asserting an unsecured claim of $462,388.07 and a priority claim of $44,204.77, for an aggregate claim of $506,592.84.[2]

It may be useful to summarize the time line of relevant events:

---

[2] *In re* Coldwave Systems, LLC, No. 05-11369, Claim No. 3. As I have previously held, I can take judicial notice of the contents of the case file in the principal case. *In re* Pomeroy, 353 B.R. 371, 373 n.2 (2006); *In re* Marrama, 345 B.R. 458, 463 n.11 (2006).

4

| Date | Event |
|---|---|
| January 31, 2003 | Agreement executed |
| June 28, 2003 | Cover Sheet filed with USPTO |
| November 24, 2004 | Notice of default given; asserted date of foreclosure |
| November 30, 2004 | Transfer Statement filed with USPTO |
| December 1, 2004 | UCC-1 filed in District of Columbia |
| December 2, 2004 | UCC-1 filed in Massachusetts |
| December 8, 2004 | Strict foreclosure offer |
| March 1, 2005 | Chapter 11 petition filed |
| April 14, 2005 | Case converted, Trustee appointed and qualified. |

*IV. Positions of the Parties*

The Trustee asserts that, as a matter of law, the filing with the USPTO was ineffective to perfect a security interest in the Patent; that perfection of a security interest in a patent is governed by state law; and that Gateway's security interest was not perfected until December 2, 2004, 89 days before the Debtor filed its petition, and hence its perfection was preferential and the foreclosure under that security interest was an avoidable preferential transfer.

Gateway contends that its security interest in the Patent was perfected when Debtor filed the Recordation Form Cover Sheet with the USPTO on June 28, 2003, well before the preference period. It further asserts that the November 24, 2004 letter constituted foreclosure of its security interest and that it took possession of the Patent by the filing of the Transfer Statement outside of the preference period, and hence became its owner, a fact which it contends Debtor acknowledged by not listing the Patent as an asset in its

5

bankruptcy schedules, creating an estoppel against Debtor.

### V. Discussion

#### A. Applicable Law

The relationship between the parties is, by agreement, governed by the laws of California. The applicable California law is its version of the Uniform Commercial Code as a patent falls within the Uniform Commercial Code definition of a "general intangible."[3]

The Agreement provides for an interest in personal property which secures payment or performance of an obligation.[4] The facts summarized above demonstrate that the security interest has become enforceable and has attached to the Patent:[5] An agreement was reached, value was given,[6] and the Debtor, as owner of the Patent, had rights in the collateral.[7]

At the time of the purported foreclosure, the Trustee was not a party in interest. His rights as a lien creditor, as successor to the debtor in possession, arise at the date of the

---

[3] CAL. COM. CODE § 9102(a)(42); id., cmt. 5d. The California version of the Uniform Commercial Code differs in some particulars from the official text of the U.C.C., beyond deleting hyphens from section numbers. References to "the Commercial Code" are technically to the California Commercial Code but are generally consistent with the official version of the Uniform Commercial Code. Any relevant differences will be noted.

[4] CAL. COM. CODE §§ 1201(36)(a), 9102(a)(73) (2006). The amendment to the former section, effective January 1, 2007, changes the citation to CAL. COM. CODE § 1201(35) but makes no substantive change.

[5] CAL. COM. CODE § 9201(a), (b).

[6] "Value" includes the giving of security for a pre-existing claim. CAL. COM. CODE § 1201(b)(43)(b).

[7] CAL. COM. CODE § 9203(b).

6

filing of the petition.[8] If, at that time, the security interest had not been foreclosed and was not perfected, it will be subject to the Trustee's rights.[9]

However, the events upon which Gateway relies all antedate the petition date. If Gateway, even if it held an unperfected security interest, properly foreclosed Debtor's rights in the Patent at the time it asserted that it did so, the Patent is beyond the reach of the Trustee *under the California Commercial Code*.[10] It thus becomes necessary to examine the sufficiency of the foreclosure.

B. *Strict foreclosure*

The language quoted from the December 8 Letter indicates Gateway's attempt to accept the Patent in partial satisfaction of its claim.[11] It proposed a value to be placed on the Patent "in partial satisfaction of the debt overdue" and asked for Debtor's timely response to the offer. There is no evidence that an acceptance of the offer was forthcoming.

The applicable portion of the Commercial Code provides that a secured party may accept collateral in full or partial satisfaction of the obligation it secures only if the conditions of the statute are satisfied. The triggering condition is that "the debtor consents

---

[8] CAL. COM. CODE § 9102(a)(52)(A)(iii). A debtor in possession has generally the rights of a trustee. 11 U.S.C. § 1107.

[9] CAL. COM. CODE § 9317(a)(2).

[10] CAL. COM. CODE § 9617(a)(1).

[11] Gateway's claim that the November 24 letter served to effect the foreclosure is incorrect; it could only be notice that Gateway intended to assert its rights as a secured party. It is the December 8 Letter that sets up the attempted strict foreclosure.

to the acceptance under subdivision (c)."[12] Subdivision (c)(1) provides that "a debtor consents to an acceptance of collateral in partial satisfaction of the obligation it secures only if the debtor agrees to the terms of the acceptance in a record authenticated after default."[13]

It appears that the Debtor did not respond. Silence is not consent in the case of a acceptance in partial satisfaction of a debt.[14] As a result, the attempted strict foreclosure fails.[15] Debtor retains its rights in the Patent, subject Gateway's security interest, but it does retain rights, and it had those rights at the time of the filing. The encumbered Patent is property of Debtor's estate.[16]

As agreed by the parties in the PTS, "If the Patent is determined to be property of the estate, however, the Trustee would at that point be free to seek to recover monetary damages from Gateway for its use of the Patent following its alleged foreclosure." But this understanding does not go quite far enough. It will be necessary to determine if the estate's interest in the Patent is subject to a security interest in favor of Gateway not subject to attack as a preferential transfer.

C. Perfection

The Commercial Code provides that the general rule for perfection of a security

---

[12] CAL. COM. CODE § 9620(a)(1).

[13] CAL. COM. CODE § 9620(c)(1).

[14] *Id.*, cmt. 3.

[15] Gateway did not attempt to acquire the Patent by a public or private sale, nor would it have been able to do so. CAL. COM. CODE § 9610(c).

[16] 11 U.S.C. § 541(a)(1).

interest in a general intangible is by filing.[17] There is an exception for "property subject to a statute, regulation, or treaty described in section 9311."[18] The referenced section provides that no filing is necessary to perfect a security interest in property subject to "a statute, regulation, or treaty of the United States whose requirements for a security interest's obtaining priority over the rights of a lien creditor with respect to the property preempt section 9310."[19] I must determine if Federal legislation governing patents is such a superceding law.

The applicable Federal law, substantively unchanged for over a century, provides that:

> An assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for valuable consideration without notice unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage.[20]

The Ninth Circuit addressed the question directly, applying California law, in *Cybernetic Services*.[21] The issue was whether a chapter 7 trustee could prevail over a secured party which had perfected its interest in a patent under state law and not by filing with the USPTO. The trustee argued that the quoted Federal law supercedes Article 9 and

---

[17] CAL. COM. CODE § 9310(a).

[18] CAL. COM. CODE § 9310(b)(3).

[19] CAL. COM. CODE § 9311(a)(1).

[20] 35 U.S.C. § 261.

[21] Moldo v. Matsco, Inc. (*In re* Cybernetic Services, Inc.), 252 F.3d 1039 (9th Cir. 2001), *cert. denied*, 534 U.S. 1130 (2002). The court noted that, although it described the governing state law as "Article 9, it meant only the California version of the Uniform Commercial Code." *Id.* at 1045.

that a security interest in a patent can only be perfected by filing with the USPTO.

In responding to the Trustee's position, the Ninth Circuit laid out the basics of preemption law:

> The Supremacy Clause invalidates state laws that interfere with, or any contrary to, federal law. Congress may preempt state law in several different ways. Congress may do so expressly (express preemption). Even in the absence of express preemptive text, Congress' intent to preempt an entire field of state law may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary regulation (field preemption). State law also is preempted when compliance with both state and federal law is impossible, or if the operation of state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress (conflict preemption). In all cases, congressional intent to preempt state law must be clear and manifest.[22]

It narrowed the issue to this:

> If, as the Trustee argues, the Patent Act expressly delineates the place where a party must go to acquire notice and certainty about liens on patents, then a state law that requires the public to look elsewhere unquestionably would undercut the value of the Patent Act's recording scheme. If, on the other hand, § 261 does not cover liens on patents, then Article 9's filing requirements do not conflict with any policies inherent in the Patent Act's recording scheme.[23]

The Ninth Circuit looked to the phrase in the statute "assignment, grant or conveyance," which has been in the act since 1870, to determine its scope. It concluded that the Patent Act requires parties to record with the USPTO only ownership interests in patents and does not preempt the Commercial Code as to the perfection of security interests:

---

[22] *Id.* at 1045-46 (citations and internal quotes omitted in this and the following two footnotes).

[23] *Id.* at 1047.

10

> [T]he [Federal] statute's text, context, and structure, when read in the light of Supreme Court precedent, compel the conclusion that a security interest in a patent that does not involve a transfer of the rights of ownership is a 'mere license' and is not an 'assignment, grant or conveyance" within the meaning of 35 U.S.C. § 261. And because § 261 provides that only an "assignment, grant or conveyance shall be void" as against subsequent purchasers and mortgagees, only transfers of ownership interests need to be recorded with the PTO.[24]

I agree with and adopt that position, which has also been accepted by Judge Deasy in the only published authority on the point in this circuit.[25]

This case, of course, is the opposite of *Cybernetic Services*. The issue here is not what rights a trustee has against a secured party who did not file with the USPTO, but against one who did so. The Federal statute does not protect holders of security interests.

An assignment, grant or conveyance (and we have seen what that encompasses) "shall be void as against any subsequent purchaser or mortgagee for valuable consideration." The Ninth Circuit ruled that a chapter 7 trustee is neither a purchaser nor a mortgagee[26] but I need not reach that point. There is nothing in § 261 that addresses in any way with the conflict between one who is not the holder of an interest by way of assignment, grant, or conveyance and a bankruptcy trustee. We must look to other law for the answer.[27]

---

[24] *Id.* at 1052.

[25] Pasteurized Eggs Corp. v. Bon Dente Joint Venture (*In re* Pasteurized Eggs Corp.), 296 B.R. 283 (Bankr. D. N.H. 2003).

[26] "Congress was concerned only with providing constructive notice to subsequent parties who take an ownership interest in the patent in question." 252 F.3d at 1054.

[27] *See In re* Transportation Design & Technology, Inc., 48 B.R. 635 (Bankr. S.D. Cal. 1985).

*D. The U.C.C. Filings*

As noted, Gateway did file two financing statements under the Uniform Commercial Code, one in the District of Columbia on December 1, 2004, and the second in Massachusetts on December 2, 2004. The District of Columbia filing was 90 days before the bankruptcy petition was filed, and the Massachusetts filing just 89 days prior. Both fall within the preference period as the outer limit is "on or within 90 days before the date of the filing."[28] As a result, it does not matter which filing was made in the correct location.[29]

*E. Perfection by Possession*

Gateway further asserts that it obtained perfection by possession of the Patent, evidenced by the filing of the Transfer Statement on November 30, 2004. As the Supreme Court pointed out more than a century ago, "a patent-right is incorporeal property, not susceptible of actual delivery or possession."[30] There is nothing in the Commercial Code that excepts general intangibles from the general rule requiring filing for perfection.[31] The

---

[28] 11 U.S.C. § 547(b)(4)(A).

[29] The Massachusetts filing is in the correct location. When a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection of a security interest in collateral. CAL. COMM. CODE § 9301(1). Debtor is a Massachusetts limited liability company. Massachusetts law specifically provides for the creation of such entities. Mass. Gen. Laws ch. 156C. Each limited liability company must file its certificate of organization with the Massachusetts Secretary of State. Mass. Gen. Laws ch. 156C, §12. As such it is a "registered organization" as that term is used in the Commercial Code, CAL. COMM. CODE § 9102(a)(70), and is located in Massachusetts. CAL. COMM. CODE § 9307(e). Massachusetts law requires the filing to be with its Secretary of State. Mass. Gen. Laws ch. 106 § 5-501(a)(2).

[30] Waterman v. Mackenzie, 138 U.S. 252, 260 (1891).

[31] CAL. COMM. CODE § 9310.

12

Code provisions involving "transfer statements,"[32] cited by Gateway, apply to collateral covered by a certificate of title.[33] Gateway's position is ill taken.

F. *Estoppel*

Gateway urges that Debtor, by failing to list the Patent as an asset in its schedules, created an estoppel which denies the Trustee the right to challenge Gateway's ownership. This argument, not supported by authority in Gateway's papers, can be disposed of in short order.

Certainly this is not a case of judicial estoppel where "a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position."[34] Nor is it an instance of equitable estoppel, which requires that "the party to be estopped must know the facts; (2) the party to be estopped must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the other party's conduct to his injury."[35]

Gateway's argument is without merit.

## V. Conclusion

The granting of the security interest to Gateway was a transfer under the terms of

---

[32] CAL. COMM. CODE § 9619.

[33] CAL. COMM. CODE § 9619, cmt 2. *See* CAL. COMM. CODE § 9620, cmt. 9.

[34] New Hampshire v. Maine, 532 U.S. 742, 749 (2001), *quoting* David v. Wakelee, 156 U.S. 680, 689 (1895).

[35] *See, e.g.*, Penny v. Giuffrida, 897 F.2d 1543, 1545-46 (10th Cir. 1990).

the Bankruptcy Code.[36] With exceptions not relevant here, the trustee may avoid any transfer to or for the benefit of a creditor on account of an antecedent debt made while the debtor is insolvent and on or within 90 days before the date of filing of a bankruptcy petition that enables the creditor to receive more than it would receive in a chapter 7 case if the transfer had not been made.[37]

The agreed facts demonstrate that the grant of the security interest in the Patent (and other assets) was preferential and voidable by the Trustee. [38] Since there are no factual disputes, judgment to that effect is appropriate at this time. The Trustee holds title to the Patent free of the claims of Gateway.

This is a bifurcated trial, and hence this is not a final order. A status conference will be noticed in ordinary course to schedule further proceedings on damages.

*William C. Hillman*

---

William C. Hillman
United States Bankruptcy Judge

Dated: May 15, 2007

---

[36] 11 U.S.C. § 101(54)(A),

[37] 11 U.S.C. § 547(b).

[38] See Ostrander v. Gardner (*In re* Millivision, Inc.), 474 F.3d 4 (1st Cir. 2007); City Bank & Trust Co. v. Otto Fabric, Inc., 83 B.R. 780 (D. Kan. 1988).

14